NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

FRANCISCO QUIJADA, *Appellant*.

No. 1 CA-CR 22-0293
FILED 05-23-2024

---

Appeal from the Superior Court in Yuma County
No. S1400CR202100040
The Honorable David M. Haws, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Robert J. Trebilcock, Kaitlin Marie Amos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge James B. Morse Jr. joined.

---

**C A T L E T T**, Judge:

¶1   Francisco Quijada ("Quijada") appeals his convictions and sentences for kidnapping with sexual motivation, sexual conduct with a minor under fifteen years of age, and sexual assault. Quijada argues his convictions and sentences violate double jeopardy and A.R.S. § 13-116, which prohibits consecutive sentences for convictions arising out of a single act. He also argues the superior court erred in admitting other act evidence under Arizona Rule of Evidence ("Rule") 404(c). We affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2   Anna[2] knew Quijada through her older sister, who had two children with him. In 2018, Anna saw Quijada as she was getting off her school bus. He asked if she wanted a ride home and she reluctantly got into his vehicle. Quijada drove Anna to a secluded area and touched her leg. Anna told Quijada to leave her alone and he drove her home.

¶3   In February 2019, when Anna was fourteen years old, she got off her school bus and walked home. After Anna arrived, Quijada knocked on the door and asked for her brother. Anna told Quijada that the only other person in the home, her father, was asleep in his bedroom. Quijada then tried to pull her outside and asked her to have sexual intercourse with him. She told him "no," but he continued "begging and asking." Anna felt pressured to comply and allowed Quijada in. Once inside, Quijada forced Anna to a couch and sexually assaulted her. Quijada then left. Anna did not immediately disclose to anyone what happened, fearing it would cause pain and conflict in her family.

¶4   In the ensuing days, Anna began cutting herself. When a family friend noticed and asked why, Anna disclosed that Quijada had

---

[1]   We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509 ¶ 93 (2013).

[2]   We use a pseudonym to protect the victim's privacy.

"forcibly raped her." The friend reported the assault to Anna's mother. Anna's mother and older sister told Anna to call Quijada, in their presence, and pretend that the friend had witnessed the assault. During the phone call, Quijada did not deny assaulting Anna, instead demanding that Anna "not say anything" and "make up something" because "it was impossible that she could have seen us." Anna's mother and older sister did not contact law enforcement.

¶5          By the end of February 2019, Anna disclosed the assault to her father, telling him that Quijada had "raped her." The family contacted law enforcement. Anna disclosed the assault to an investigator, providing statements consistent with those she made to her family members and family friend.

¶6          After investigating, the State of Arizona ("State") charged Quijada with two counts of kidnapping with sexual motivation, class 2 felonies (counts 1 and 5); one count of aggravated assault, a class 6 felony (count 2); one count of sexual conduct with a minor under fifteen years of age, a class 2 felony (count 3); and one count of sexual assault, a class 2 felony (count 4). Counts 1 and 2 involved Quijada's conduct in 2018 and counts 3 through 5 involved his conduct in 2019. All counts, except count 2, qualified as dangerous crimes against children. *See* A.R.S. § 13-705.

¶7          Before trial, the State notified Quijada that it intended to present sexual propensity evidence under Rule 404(c), including evidence of a prior felony conviction. The State alleged that, in 2011, Quijada solicited sexual intercourse from his thirteen-year-old niece and "went to her house to complete the act." The State said it intended to present certified court documents showing that Quijada pled guilty to burglary in the second degree with sexual motivation and admitted to entering the victim's home to engage in sexual intercourse. The State noted that Quijada's probation term for that offense, which restricted his access to minors, ended shortly before the conduct involving Anna. Quijada objected and requested a hearing.

¶8          At that hearing, the State presented the sentencing documents, presentence report, signed plea agreement and factual basis for the guilty plea, and the victim's statements to law enforcement. The factual basis for the guilty plea stated as follows: "On March 15, 2011, I, Francisco Quijada, entered the residence of [the victim] . . . with the intent to commit a sexual offense against her. [The victim] left the residence before I engaged in sexual acts with her, but I remained unlawfully at the residence awaiting her return. This residence is located in Yuma County. The victim . . . was

13 years old at the time." Quijada objected to the admission of the prior offense based on remoteness, adding that any reference to the evidence should be limited.

¶9 In a detailed ruling, the superior court found that (1) the State presented sufficient evidence of Quijada's prior offense through "the certified conviction, the plea agreement, and the presentence report"; (2) the prior offense provided "a reasonable basis to infer that [he] has a character trait giving rise to an aberrant sexual propensity to commit the crime charged"; (3) "the evidentiary value of the proof of the prior incident is not substantially outweighed by the danger of unfair prejudice"; and (4) the remoteness in time, surrounding circumstances, and intervening events did not "dilute" or "undercut the probative value of the evidence." The court added that "while remote in time, the conduct is similar to the conduct alleged in this case. The strength of the proof is . . . high. Its probative value is high." The court restricted the State's use of the prior offense under Rule 404(c) to "the case number, date of conviction, nature of the offense, classification of offense, factual basis in the plea agreement, the identity of the person, and the relationship, if any, of that person to the defendant."

¶10 At trial, the State complied with the court's Rule 404(c) ruling, presenting only certified copies of the signed factual basis and plea agreement, sentencing documents, and testimony that Anna and her family were aware of the prior offense. When Quijada testified, he admitted to pleading guilty to the prior offense and receiving probation. He claimed that his conditions of probation had been restrictive, and he never wanted to put himself in a similar situation. Quijada also testified that law enforcement had "tricked" him in the prior offense. The State argued that statement opened the door to additional evidence about the prior offense, but the court affirmed its previous ruling.

¶11 The superior court provided standard limiting instructions for Rule 404(c) evidence and the use of a defendant's prior felony conviction. Quijada did not object or propose different instructions and, in his closing remarks, asked the jury to pay specific attention to the instructions. He also argued that the prior offense did not support the contention that he had an aberrant sexual propensity to commit the current offenses, it occurred long before the current offenses, it deterred him from reoffending, and it made him an easy target for false allegations. The State briefly referred to the evidence in closing remarks, noting only that the jury could consider the prior offense as sexual propensity evidence.

¶12         After the State's case-in-chief, Quijada argued that the evidence presented for counts 3 and 4 involved a single act of sexual intercourse, so the offenses violated double jeopardy and could not be submitted to the jury.  The court disagreed, finding that counts 3 and 4 had different elements because sexual conduct with a minor has an age requirement and sexual assault does not.

¶13         The jury found Quijada guilty of counts 3 through 5 and found the existence of aggravating factors.  Before sentencing, Quijada again contended that counts 3 and 4 involved the same conduct and would result in "double sentencing."  But the court imposed the presumptive term of 20 years' imprisonment for count 3, the minimum term of 13 years' imprisonment for count 4, and the minimum term of 10 years' imprisonment for count 5.  The State argued that A.R.S. § 13-705 required consecutive sentences.  The superior court agreed and imposed consecutive sentences for each count.

¶14         Quijada timely appealed.  We have jurisdiction.  *See* A.R.S. § 12-120.21(A)(1).

## DISCUSSION

### I.   Double Jeopardy

¶15         Quijada first contends his convictions and sentences for counts 3 and 4 violate double jeopardy because they arise out of the same offense.  We review *de novo* double jeopardy and statutory interpretation issues.  *State v. Powers*, 200 Ariz. 123, 125–26 ¶¶ 5, 8 (App. 2001).

¶16         "The Double Jeopardy Clauses of the United States and Arizona Constitutions protect criminal defendants from multiple convictions and punishments for the same offense."  *State v. Ortega,* 220 Ariz. 320, 323 ¶ 9 (App. 2008); *see also* U.S. Const. amend. V; Ariz. Const. art. 2, § 10.  Where the same act "constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Under the "*Blockburger* test," we inquire "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment."  *United States v. Dixon*, 509 U.S. 688, 696 (1993).

¶17         To commit sexual conduct with a minor (count 3), one must "intentionally or knowingly engage in sexual intercourse" with any person

"who is under fifteen years of age." A.R.S. § 13-1405(A)–(B). To commit sexual assault (count 4), one must "intentionally or knowingly engage in sexual intercourse . . . with any person without consent of such person." A.R.S. § 13-1406(A). For sexual assault, the victim's age is relevant only for sentencing. A.R.S. § 13-1406(B); *see also State v. Eagle*, 196 Ariz. 188, 192–93 ¶¶ 17–18 (2000) (concluding that sentencing factors do not constitute an element of an offense).

**¶18** Applying *Blockburger*, sexual conduct with a minor requires proof of a fact (age) that sexual assault does not. *See Blockburger*, 284 U.S. at 304. And sexual assault requires proof of a fact (lack-of-consent) that sexual conduct with a minor does not. *See id.* Because sexual conduct with a minor requires proof of age but sexual assault does not, and sexual assault requires proof of lack-of-consent but sexual conduct with a minor does not, we conclude each offense contains elements not present in the other. *See Merlina v. Jejna*, 208 Ariz. 1, 4 ¶ 12 (App. 2004).

**¶19** Not only does statutory language demand that result, but prior precedent supports it. This court has held, in the context of lesser-included offenses, that "[l]ack of consent is an element of sexual assault, while the age of the victim is an element of sexual conduct. Neither element is common to both offenses." *State v. Villegas*, 132 Ariz. 433, 434 (App. 1982). Thus, Quijada's convictions and sentences for counts 3 and 4 do not violate double jeopardy.

**¶20** We also reject Quijada's request to consider the language in the indictment and the underlying factual nature of his offenses. When one act violates two statutes, the *Blockburger* test is "the only permissible interpretation of the double jeopardy clause." *State v. Carter*, 249 Ariz. 312, 316 ¶ 9 (2020) (citation and quotation marks omitted). When a defendant's convictions survive the *Blockburger* test—as they do here—the double jeopardy analysis is complete, and the underlying conduct the State alleged is irrelevant. *See Dixon*, 509 U.S. at 707–12 (declining to adopt a "same-conduct" test and expand the scope of review established in *Blockburger*).

## II. Consecutive Sentences

**¶21** Quijada next argues that the court violated A.R.S. § 13-116 by imposing consecutive sentences for convictions arising out of a single act. We review *de novo* whether consecutive sentences violate § 13-116. *State v. Siddle*, 202 Ariz. 512, 517 ¶ 16 (App. 2002).

**¶22** Under A.R.S. § 13-116, "[a]n act or omission which is made punishable in different ways by different sections of the laws may be

punished under both, but in no event may sentences be other than concurrent." The statute, therefore, prohibits consecutive sentences for a "single act" punished under different statutes. *State v. Gordon*, 161 Ariz. 308, 315 (1989).

**¶23** The superior court, applying A.R.S. § 13-705, imposed consecutive sentences for kidnapping, sexual conduct with a minor, and sexual assault. Section 13-705 requires "that sentences imposed on a defendant convicted of certain dangerous crimes against children run consecutively even when the underlying convictions arise from a single act." *State v. Jones*, 235 Ariz. 501, 502 ¶¶ 1, 7 (2014); *see also* A.R.S. § 13-705(P) (then-numbered A.R.S. § 13-705(M)). In *Jones*, our supreme court held that, where § 13-705 applies, it controls, and the superior court must impose consecutive sentences, even when doing so violates § 13-116. 235 Ariz. at 502–03 ¶¶ 1, 8, 11.

**¶24** Here, the jury convicted Quijada of three offenses involving a minor under fifteen years of age and each qualified as a dangerous crime against children. *See* A.R.S. § 13-705(E)–(F). Thus, the mandatory language in § 13-705 applies, and the court properly imposed consecutive sentences. *See Jones*, 235 Ariz. at 502–03 ¶¶ 1, 11. Though Quijada argues that *Jones* was wrongly decided, we are bound by it. *See State v. Long*, 207 Ariz. 140, 145 ¶ 23 (App. 2004).

## III. Other Act Evidence

**¶25** Quijada contends that the superior court abused its discretion by permitting the State to present evidence of a prior offense to show sexual propensity. Quijada also argues that the court did not sufficiently instruct the jury on using that evidence. We review the court's admission of Rule 404(c) evidence for an abuse of discretion. *State v. Yonkman*, 233 Ariz. 369, 373 ¶ 10 (App. 2013). Quijada did not object to the jury instructions, so we review them for fundamental error. *State v. Escalante*, 245 Ariz. 135, 140, 142 ¶¶ 12, 21 (2018).

**¶26** Rule 404(b) prohibits evidence of other acts or crimes if offered only "to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b)(1). But Rule 404(c) allows such evidence "if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c). Rule 404(c) requires the superior court to make specific findings that (1) the evidence is sufficient to permit a jury to find that the defendant committed the other act; (2) "commission of the other act

provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged"; and (3) the probative "value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403." Ariz. R. Evid. 404(c)(1)(A)–(C); *see also* Ariz. R. Evid. 403; *State v. Terrazas*, 189 Ariz. 580, 582 (1997). If the court admits other act evidence, it must instruct the jury "as to the proper use of such evidence." Ariz. R. Evid. 404(c)(2).

**¶27** In weighing the probative value of other act evidence, the court must consider the remoteness of the other act, the similarity or dissimilarity of the other act, and relevant intervening events. Ariz. R. Evid. 404(c)(1)(C)(i)–(ii), (vi)–(vii). This court has noted that other act evidence can overcome a significant gap in time if the other act shares a similar "setting, age of victim, and mode of operation." *State v. Salazar*, 181 Ariz. 87, 92 n.5 (App. 1994).

**¶28** The superior court made all three required findings and did not abuse its discretion in so doing. First, the court found that the State presented sufficient evidence of Quijada's prior offense through certified court documents. *See* Ariz. R. Evid. 404(c)(1)(A). Those documents showed that Quijada pled guilty to entering the home of his thirteen-year-old niece, intending to engage in sexual acts with her.

**¶29** Second, the court found that Quijada's prior offense provided a reasonable basis to infer that he had a "character trait" that gave "rise to an aberrant sexual propensity" to commit the current offenses. Ariz. R. Evid. 404(c)(1)(B). The prior and current offenses involved minor female victims of similar ages. Quijada had familial relationships with both, and he targeted them in their homes. The prior offense shared significant similarities to the current offense and could be admitted as sexual propensity evidence. *See State v. Aguilar*, 209 Ariz. 40, 48 ¶ 27 (2004) (noting that the admissibility of Rule 404(c) evidence may turn on the similarities of the prior and current offenses).

**¶30** Third, the superior court found that the probative value of the prior offense was not substantially outweighed by the danger of unfair prejudice. *See* Ariz. R. Evid. 404(c)(1)(C). The court found that the remoteness in time between the prior and current offenses did not undercut the prior crime's evidentiary value. Although the prior offense occurred in 2011, Quijada's probation term restricted his access to minors and ended shortly before he committed the current offenses. *See State v. Super. Ct.*, 129 Ariz. 360, 362 (App. 1981) (concluding that the defendant cannot argue

remoteness when he "was isolated from contact with children" during that gap in time). Thus, the gap in time when Quijada was subject to probation did not eliminate the probative value of Quijada's prior offense, which shared a nearly identical "setting, age of victim, and mode of operation" with the current offenses. *See Salazar*, 181 Ariz. at 92 n.5.

**¶31**     As to prejudice, the court narrowed and limited the State's use of the prior offense, "minimizing its potential for unfair prejudice while preserving its probative value." *State v. Rix*, 256 Ariz. 125, 261 ¶ 22 (App. 2023) (citation and quotation marks omitted). The court allowed the State to admit only the basic facts of Quijada's prior offense, his probation status, and the nature of his relationship to the victim. The State complied and did not engage in lengthy closing remarks regarding the prior offense. The court did not abuse its discretion by admitting, yet narrowing, evidence of Quijada's prior offense.

**¶32**     The superior court also instructed the jury on Rule 404(c) evidence and the proper use of a defendant's prior felony conviction. The court took both instructions from the Revised Arizona Jury Instructions. *See* Revised Arizona Jury Instructions ("RAJI") Standard Criminal 21, 25 (6th ed. 2022). Those instructions "closely tracked the language" of the applicable rules and "did not misstate the law." *State v. Morales*, 198 Ariz. 372, 374 ¶ 4 (App. 2000); *see also* Ariz. R. Evid. 404(c), 609(a). Quijada argues that the instructions did not inform "the jury as to what quantum of proof was necessary in order for the jury to properly infer the sexual propensity." Not so. The court instructed the jury that it could consider the other act evidence "only if you decide that the State has proved by clear and convincing evidence that . . . the acts show the defendant's character predisposed him to abnormal or unnatural sex acts." Tellingly, the jury acquitted Quijada on two of the five counts with which he was charged. We find no error, fundamental or otherwise, in the court's instructions.

**¶33**     Finally, Quijada challenges the constitutionality of Rule 404(c). Because he did not raise this issue below, we review for fundamental error. *See Escalante*, 245 Ariz. at 140, 142 ¶¶ 12, 21; *State v. Lowery*, 230 Ariz. 536, 540 ¶ 11 (App. 2012) (reviewing a constitutional issue not raised in the trial court for fundamental error). Quijada argues that Rule 404(c) does not provide "explicit standards" for the admission of character trait evidence and violates due process. We disagree.

**¶34**     The admission of sexual propensity evidence under Rule 404(c), which is a longstanding exception to the rule precluding other act evidence, requires the superior court to make specific findings as to each

prerequisite for admissibility. *See Aguilar*, 209 Ariz. at 49 ¶ 31; *State v. Williams*, 209 Ariz. 228, 236 ¶ 33 (App. 2004); Ariz. R. Evid. 404(c)(1)(D). "Rather than being an empty formality, this process is designed to be a meaningful exercise." *State v. James*, 242 Ariz. 126, 131 ¶ 16 (App. 2017). The finding requirement helps ensure "that only truly relevant other acts are admitted" and enables appellate review. *Aguilar*, 209 Ariz. at 49 ¶ 31. Moreover, the balancing test in Rule 404(c)(1)(C), which lists factors the court must take into consideration, minimizes the risk of unfair prejudice and protects defendants from wholesale admission of other act evidence. *See Rix*, 256 Ariz. at 260–61 ¶¶ 19–22. Finally, Rule 404(c) requires the court to "instruct the jury as to the proper use of such evidence." Ariz R. Evid. 404(c)(2). Rule 404(c) contains sufficient standards and protections to ensure that other act evidence is admitted only "to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged."

¶35 Quijada also has not shown that Rule 404(c) otherwise violates due process. "[D]ue process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *State v. Stocks*, 227 Ariz. 390, 394 ¶ 7 (App. 2011). As to notice, Rule 404(c) requires the State to make disclosure of other act evidence it intends to have admitted "no later than 45 days prior to the final trial setting or at such later time as the court may allow for good cause." Ariz. R. Evid. 404(c)(3). The State complied with that requirement here.

¶36 As to an opportunity to be heard, after the State notified Quijada that it intended to introduce other act evidence, the court held a hearing, during which Quijada had a meaningful opportunity to respond to the State's evidence and arguments, including by arguing that the State's other act evidence was irrelevant. Once admitted, "the defendant has the right, as a matter of due process, to present relevant evidence challenging its validity and reliability," and the court allowed Quijada to do so during trial. *State v. Speers*, 209 Ariz. 125, 130 ¶ 16 (App. 2004). In fact, during closing arguments, Quijada acknowledged and emphasized the clear and convincing evidence standard and argued to the jury that it needed "to determine if the defendant had a character trait that predisposed him to commit *the crimes charged*." He also argued that the other act evidence was "not proof in this case." The court did not violate Quijada's due process rights in its application of Rule 404(c).

## CONCLUSION

¶37        We affirm Quijada's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:     AGFV