856 P.2d 1183

**STATE of Arizona, Appellee,**

v.

**Thomas WITWER, Appellant.**

**No. 1 CA–CR 92–0200.**

Court of Appeals of Arizona,
Division 1, Department E.

July 20, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Dawn M. Northup, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

The defendant appeals from his conviction and sentence for sexual abuse, a class 5 felony. He argues that the trial court erred by failing to give certain jury instructions, although he did not request any of these instructions at trial. We conclude that none of the issues raised by the defendant constitutes fundamental error.

The facts, unless otherwise indicated, are viewed in a light most favorable to sustaining the conviction. *State v. Zmich,* 160 Ariz. 108, 109, 770 P.2d 776, 777 (1989). The victim, in June of 1990, started working part-time as a chiropractic assistant for a chiropractic clinic in Phoenix. She worked only three days her first week because she had an asthma attack that forced her to stay home. The defendant, Thomas Witwer, a chiropractor, told the victim that he could help her asthma by giving her chiropractic treatment, which he referred to as an "adjustment."

The first two days at the clinic the victim was trained by the defendant and another employee. The defendant flirted with her by attempting to pinch her buttocks and by making comments about her body. On the victim's third day on the job, the defendant offered to give her an adjustment for her asthma after they had finished their work. After the office manager left, the defendant and the victim were the only people at the office. The victim lay face down on a table fully clothed. The defendant adjusted her legs and buttocks with a device the victim described as a "clicker." He also ran his finger up and down her spine and neck. Up to this point, the victim believed she was receiving a routine treatment.

The defendant then tried to unfasten the victim's bra. She asked him if that was necessary, and he responded "no." He told her that he was losing his touch because it usually took him only one try to unfasten a bra, and despite having said that it was unnecessary, he proceeded to unfasten the bra. He asked her to turn over, which she did. He then adjusted her chest and shoulders. As he was adjusting her sternum, he grabbed her right breast. She asked him to stop, and he removed his hand and apologized, stating he would not do it again.

The defendant continued to adjust the victim's chest and he continued making comments about her breasts. She told him this was making her uncomfortable. He then put his hand on her vaginal area over her clothing. She told him not to do that, and she got off the table. As she was leaving the room, she was attempting to refasten her bra strap. The defendant offered to help, but she refused. As she was reaching behind her back, he reached around and touched her breasts. She left the office and went home and called a friend, who suggested that she report the incident to the police.

At trial, the defendant admitted that he touched the victim's breasts and vaginal area because he had developed a romantic interest in her. He asserted that the victim had consented to everything he did. He said that it all started during the job interview when he was attracted to the victim because she was friendly, attractive, and dressed nicely. According to the defendant, the interview was very informal, and they discussed several personal matters, including the fact that the victim had been

sexually molested as a child, that she was sexually active with her boyfriend but was open to new relationships, that she wanted to have her breasts enlarged, and that the defendant had had a "semi-affair" with another woman.

The defendant also stated that there was an open and friendly atmosphere in the clinic and that he and the other employees liked to laugh and tell jokes about beautiful women. He said that the victim laughed at the jokes he told and even told her own jokes. He related that he had tried to pinch her once, but she scooted out of the way and said, "I'm too fast for you." He said that she tried to pinch him, but only managed to grab his pants. The defendant believed that he and the victim were playing a game and that she was reacting to him "as a woman reacts to a man."

The victim denied flirting with the defendant at any time and denied that they had talked about personal matters during the interview, except she did agree that the defendant had told her that she would be good for business because she would attract male patients. She also conceded that, at some time while she was at the clinic, she told the defendant she had been molested as a child and had asked the defendant if he had ever had an affair. She stated that she never gave the defendant permission to touch her, and she also testified that she felt frightened and intimidated during the incident which gave rise to the charge. She said that fear of being raped caused her to refrain from initially confronting the defendant during the incident.

▇ A jury convicted the defendant of sexual abuse, and he was sentenced to three years probation with ninety days in jail. He filed a timely notice of appeal. At trial, he failed to make any objections or offer any instruction concerning issues relating to the jury instructions he now raises on appeal. Thus, we will not reverse his conviction unless the failure to instruct rises to the level of fundamental error. *See State v. Zaragoza*, 135 Ariz. 63, 66, 659 P.2d 22, 25 (1983).

## THE TERM "WITHOUT CONSENT" IS NOT LIMITED TO THE DEFINITIONS LISTED IN A.R.S. SECTION 13–1401(5)

▇ The defendant was charged with sexual abuse by engaging in sexual contact with the victim without her consent. Arizona Revised Statutes Annotated ("A.R.S.") section 13–1401 defines "without consent." It provides:

5. "Without consent" includes any of the following:

(a) The victim is coerced by the immediate use or threatened use of force against a person or property.

(b) The victim is incapable of consent by reason of mental disorder, drugs, alcohol, sleep or any other similar impairment of cognition and such condition is known or should have reasonably been known to the defendant.

(c) The victim is intentionally deceived as to the nature of the act.

(d) The victim is intentionally deceived to erroneously believe that the person is the victim's spouse.

The defendant argues that sexual conduct which does not fall within one of the four categories listed in the statutory definition of "without consent," is necessarily "with consent," and therefore not a crime. Based on this view of the law, he moved for a judgment of acquittal. He has not appealed from the denial of that motion, perhaps in tacit acknowledgement that the evidence viewed most favorably to the state will support the conclusion that the victim might have been deceived as to the nature of some of the acts, or might have felt coerced into behaving as she did. He recasts the same argument in terms of the need for an instruction to inform the jury of his interpretation of "without consent."

The defendant, in his brief, elaborates on his argument with a hypothetical example. He posits that a man who walks across the street and approaches a woman who he does not know and surprises her by touching her breast, would not be guilty of sexual abuse because his conduct was not "without consent" as that term is defined in the statute. The example undermines

the argument. We cannot believe that the legislature intended so absurd a result. The words "without consent" are easily understood as they are ordinarily used, and the four sub-definitions found in the statute were obviously included to eliminate any doubt as to whether the less ordinary conduct they refer to was also included.

The evolution of the statute supports our conclusion. Before 1985, A.R.S. section 13–1401(5) provided: " 'Without consent' *means* any of the following...." (emphasis added). The legislature then amended the statute to read, "Without consent *includes* any of the following...." 1985 Ariz.Sess.Laws, Ch. 364, § 16, eff. May 16, 1985 (emphasis added). The word "includes" is a term of enlargement which conveys the idea that conduct which does not fall within the listed behavior may also violate the statute.

### THE INSTRUCTION ON INTENT WAS ADEQUATE

The trial court gave the following instruction to the jury: "A person commits sexual abuse by intentionally or knowingly engaging in sexual contact with any person 14 or more years of age without consent of that person." The defendant contends that the instruction given did not adequately inform the jury that the defendant, to be guilty, must knowingly or intentionally touch the victim and that he must do so with the knowledge that he does not have her consent to touch her. The state argues, without citation to authority, that the relevant mental state is the victim's, so that the crime is one of strict liability. In other words, the state says that one who intentionally touches another person sexually is guilty of sexual abuse if the victim did not consent, even though the person doing the touching truly believed that the other consented. Clearly, this is not the law. If it were, all manner of absurd and unjust convictions could ensue.

■ Arizona Revised Statutes Annotated section 13–202(A) provides: "If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, *the prescribed mental state shall apply to each such element unless a contrary legislative purpose plainly appears.*" (emphasis added). The prescribed mental state for the crime of sexual abuse is "intentionally or knowingly." *See* A.R.S. § 13–1404(A). Because no contrary legislative purpose plainly appears, "intentionally or knowingly" applies to all elements of the sexual abuse statute, including "without consent." *See State v. Bridgeforth*, 156 Ariz. 58, 750 P.2d 1 (App.1986) (absent clear legislative intent to the contrary, prescribed mental state applies to all elements of the offense), *aff'd as modified*, 156 Ariz. 60, 750 P.2d 3 (1988).

■ We hold that in a prosecution for sexual abuse, the state must prove that the defendant intentionally and knowingly engaged in sexual contact, and that the defendant knew that such contact was without the consent of the victim. *See* A.R.S. § 13–105(6)(b) ("knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists); *State v. Diaz*, 166 Ariz. 442, 803 P.2d 435 (App.1990) (state required to show that the defendant knew that he was transporting a narcotic drug), *vacated in part on other grounds*, 168 Ariz. 363, 813 P.2d 728 (1991).

■ We turn to a consideration of whether the instruction given was adequate. To repeat, the instruction provided: "A person commits sexual abuse by intentionally or knowingly engaging in sexual contact with any person 14 or more years of age without consent of that person."

The defendant argues that the instruction was not adequate, and that the judge should also have given an instruction like the one found in *State v. Johnson:* " 'Without consent' means that the Defendant was aware or believed that the other person was coerced by the immediate or threatened use of force ..." 155 Ariz. 23, 25, 745 P.2d 81, 83 (1987).

We first observe that the court in *Johnson* never actually addressed whether the instruction used in that case was an accurate statement of the law. More important, such an instruction would impart too narrow a view of how the offense might be committed because it would not allow for the commission of the offense by any means other than coercion. More important, yet, the instruction actually given in this case was taken directly from the applicable statute and adequately allowed the defendant to argue his theory of the case, which was that the victim had in fact consented to everything he did. Most important of all, the trial judge did instruct the jury that "knowingly means that a defendant acted with awareness of the existence of conduct or circumstances constituting an offense. It does not mean that a defendant must have known the conduct is forbidden by law." This definition directly supported the defendant's argument to the jury.

### THE DEFENDANT WAS NOT DEPRIVED OF HIS RIGHT TO A UNANIMOUS JURY VERDICT

■ The defendant argues next that the trial judge should have instructed the jury that it had to agree unanimously as to which of the touchings occurred without consent. Again, this was not raised at trial, so we review only for fundamental error.

The defendant was charged with a single count of sexual abuse. The information read: "THOMAS JOSEPH WITWER, on or about the 23rd day of June, 1990, intentionally or knowingly engaged in sexual contact with [the victim], fourteen or more years of age, without the consent of [the victim] ..." The entire incident between the defendant and the victim was a single episode spanning no more than forty five minutes. While there is authority for the proposition that it is not error at all to fail to instruct the jury that they must agree unanimously on what particular act or acts occurred which constituted the crime, *see* State v. Encinas, 132 Ariz. 493, 647 P.2d 624 (1982); State v. Counterman, 8 Ariz. App. 526, 448 P.2d 96 (1968); and State v.

Keith, 24 Ariz.App. 275, 537 P.2d 1333 (1975), it certainly was not fundamental error. State v. Kelly, 149 Ariz. 115, 716 P.2d 1052 (App.1986).

Here, with the exception of a fleeting comment by the prosecutor about the third touching certainly being without consent even if the other two were not, the case was presented and argued by both parties as an all or nothing situation. That is, either the victim was telling the truth and the defendant was lying or vice versa. It seems highly likely that the jury viewed the case in that light. *See State v. Schroeder,* 167 Ariz. 47, 804 P.2d 776 (App.1990).

■ The defendant also argues that the jury should have been instructed that it had to agree unanimously as to which of the applicable definitions of "without consent" applied. Because we have already determined that the meaning of "without consent" is not limited to the four situations listed in the statute, and because there is a high probability that the jury gave the words their ordinary meaning, it was not fundamental error, if it was error at all, to fail to instruct the jury in the manner for which the defendant now argues.

### THE DEFENDANT WAS NOT ENTITLED TO AN INSTRUCTION ON A MISTAKEN BELIEF OF FACT DEFENSE

■ The defendant's final argument is that it was fundamental error for the trial judge to fail to instruct the jury that, if the defendant had a mistaken belief that the victim consented to his actions, such would be a defense to the charge. While a mistake of fact instruction might have been proper under facts that could be inferred from the evidence, such an instruction would not have fit the theory of the defendant's case. The defendant's sole theory of defense was that he used no force and no deceit and that the victim, in fact, consented. He continually argued that the victim was not telling the truth about what happened. The defendant did not attempt to argue that, even if the victim had not consented, he mistakenly believed she had.

Accordingly, the failure to give such an instruction was not fundamental error.

Pursuant to A.R.S. section 13–4035, we have reviewed the record for fundamental error, and have found none. The conviction and sentence are affirmed.

CLABORNE, P.J., and NOYES, J., concur.